UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:22-cr-00148 |
| | : | |
| Plaintiff, | : | ORDER |
| | : | [Resolving Doc. 65] |
| v. | : | |
| | : | |
| RUBIN AUSTIN, | : | |
| | : | |
| Defendant. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Defendant Rubin Austin pleaded guilty to several narcotics charges. Austin also pleaded guilty to an enhanced penalty under 21 U.S.C. § 841(b)(1)(C) for distributing a mixture of heroin, fentanyl, and fluorofentanyl that resulted in a drug user's death. The death enhancement carries a 20-year statutory-minimum sentence.

In exchange for Austin's guilty plea to a Criminal Rule 11(c)(1)(C) plea agreement and if accepted by the Court, Austin and the Government agreed to a 102-month prison sentence.

Now, through his third appointed counsel, Austin moves to withdraw his guilty plea. Because Austin unreasonably delayed before moving to withdraw the plea and does not otherwise give good reason to permit the plea withdrawal, the Court **DENIES** Austin's motion.

I. Background

On January 21, 2022, a 30-year-old man died after overdosing on drugs that the decedent's girlfriend purchased that same day.[1] A toxicology report later found that the

---

[1] Doc. 75 at ¶¶ 14–16 (sealed).

Case No. 1:22-cr-00148
GWIN, J.

decedent died from "acute combined toxic effects of fentanyl, fluorofentanyl, methamphetamine, and morphine … ."[2]

Within hours of the drug overdose death, Officers searched the decedent girlfriend's phone and discovered that Defendant Austin sold heroin to the girlfriend the same day that the decedent overdosed.[3] Using the girlfriend's phone police called Austin and set up a purchase of heroin and cocaine from Austin in "ten minutes." Police successfully arrested Austin in the controlled-buy operation. In Austin's car, officers found several mixtures and substances containing heroin, fentanyl, fluorofentanyl, cocaine, and cocaine base.[4]

A grand jury charged Austin with several counts related to possessing and selling cocaine, cocaine base, heroin, fentanyl, and fluorofentanyl, and using a phone to sell drugs.[5]

On May 25, 2022, the grand jury issued a superseding indictment. Under the new indictment, Austin faced an enhanced penalty for drug distribution resulting in death.[6] Without the death enhancement, Austin's guidelines sentence would likely have been 41–51 months.[7] But the death-resulting enhancement carries a 20-year statutory-minimum sentence.

After the superseding indictment issued, Austin sought new counsel.[8] On July 7, 2022, the Court appointed Attorney Christian Grostic, a highly experienced attorney, to represent Austin.

---

[2] Doc. 75 ¶ 24 (sealed).
[3] *Id.* at ¶ 17.
[4] Doc. 57 ¶ 22(d) (sealed).
[5] Doc. 11.
[6] The superseding indictment also added two additional drug-possession charges, for a total of eight counts. On November 17, 2022, the grand jury issued a second superseding indictment. The second superseding indictment did not change the charges' substance.
[7] The Court estimates that the drug quantity involved would produce a base offense level of 24. For present purposes, the Court assumes Austin would receive three levels off for acceptance of responsibility, for a final offense level of 21. And although Austin has a decades-long criminal history, his criminal-history category is II.
[8] Docs. 19, 20. The Court had initially appointed Attorney Robert Botnick to represent Austin.

Case No. 1:22-cr-00148
GWIN, J.

On December 15, 2022, Austin pleaded guilty to all the charges in the indictment. In exchange for Austin's plea, the Government agreed to jointly recommend a 102-month sentence under Federal Criminal Procedure Rule 11(c)(1)(C). [9]

On January 18, 2023, Attorney Grostic moved to withdraw as counsel, citing Austin's complaints about Attorney Grostic's representation and disagreement over whether Austin should withdraw his plea.[10] The Court granted the motion and appointed Attorney Craig Weintraub to represent Austin. On March 7, 2023, Austin moved through Attorney Weintraub to withdraw his plea.

## II. Discussion

Austin's motion arrives unreasonably late and without excuse. Further, Austin has consistently admitted that he sold drugs to the decedent. And Austin's criminal history provided ample experience with the criminal-justice system. So, Austin may not withdraw his plea.

"[T]he aim of … [R]ule [11's withdrawal provision] is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."

Courts in this circuit generally consider seven factors when deciding whether a defendant may withdraw a guilty plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the

---

[9] Doc. 57 (sealed).
[10] Doc. 58.

Case No. 1:22-cr-00148
GWIN, J.

> degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.[11]

These factors are "general" and "non-exclusive" and no single factor controls.[12]

**Timeliness and excuse.** The first two factors—timeliness and excuse for any untimeliness—weigh strongly against any plea withdrawal. A 30-day delay is generally "at the boundary line between" timely and untimely plea-withdrawal motions.[13] Unexcused lateness alone sometimes justifies denying a plea-withdrawal motion.[14]

Here, Austin moved to withdraw his plea 82 days after pleading guilty.

Austin says the Court should instead count the time between his December 15 guilty plea and the January 18 new-counsel motion, which suggested Austin might seek to withdraw his plea.[15] But the new-counsel motion still arrived 33 days after Austin first entered his guilty plea. So, unless Austin gives good excuse for the delay, Austin waited an unreasonably long time before moving to withdraw his plea.

Austin gives no good excuse. Instead, Austin says the communication breakdown between Austin and Attorney Grostic justifies any delay. According to Austin, Attorney Grostic counseled against plea withdrawal. So, Austin says, Austin was unable to effectively communicate his desire to withdraw the plea to Attorney Grostic..

But any strategic disagreements with Attorney Grostic do not explain or excuse a nearly three-month delay.[16] Further, Austin does not say that Attorney Grostic refused any

---

[11] United States v. Ellis, 470 F.3d 275, 281 (6th Cir. 2006) (citing United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir. 1994))
[12] *Id.* (quoting United States v. Bazzi, 94 F.3d 1025 (6th Cir. 1996)).
[13] United States v. Benton, 639 F.3d 723, 727 (6th Cir. 2011).
[14] United States v. Valdez, 362 F.3d 903 (6th Cir. 2004).
[15] *See* Doc. 58 at 1–2 (PageID 419–20).
[16] *See, e.g.,* United States v. Palmer, CRIM.A. 08-66-DLB, 2009 WL 3834091 (E.D. Ky. Nov. 16, 2009) (declining to credit counsel's contrary advice when deciding whether good excuse for delay existed), *aff'd,* 466 F. App'x. 514 (6th Cir. 2012).

Case No. 1:22-cr-00148
GWIN, J.

direct request to withdraw the plea. Moreover, the January 18 new-counsel motion merely infers that Austin might seek to withdraw his plea without saying that Austin wanted to withdraw the plea. The January 18, 2023, new-counsel motion suggests that Austin could communicate strategy preferences to Attorney Grostic.

So, because Austin's motion arrived unreasonably late without excuse, the timeliness factors counsel strongly against granting the plea-withdrawal motion.

**Maintaining innocence.** Austin has never meaningfully disputed that he sold drugs to the decedent's girlfriend.[17] At most, Austin has questioned whether his drugs alone killed the decedent.[18] So, Austin has not consistently maintained his innocence.

Courts may consider admissions from plea agreements and plea colloquies when deciding whether a defendant has maintained innocence.[19] Here, in both the plea agreement[20] and during the plea colloquy,[21] Austin admitted to selling the drugs that killed decedent. Moreover, shortly before entering a guilty plea, Austin admitted to police that he sold decedent's companion crack cocaine and what Austin thought was heroin. Austin said he did not know that the heroin mixture contained fentanyl and "expressed remorse for [the decedent's] death."[22]

Austin points out that he has at times suggested that other drugs contributed to the decedent's death. That is true.[23] But the enhanced penalty does not require the Government

---

[17] *See* Doc. 65-1 (sealed) at 2 (PageID 493) (admitting to selling drugs in the controlled buy).
[18] *See* Arraignment for Second Superseding Indictment at 17 (court copy). ("THE COURT: ... It sounds like you believe the government cannot prove that any substances you may have provided caused the death. ... THE DEFENDANT: Yes, sir. Certainly.")
[19] *See* United States v. Owens, 215 F. App'x 498 (6th Cir. 2007)(unpublished) (deciding that a district court did not abuse its discretion by considering statements of guilt at plea colloquy and in the plea agreement).
[20] Doc. 57 ¶ 22–23 (sealed).
[21] Doc. 62 at 16–17 (PageID 443–44).
[22] Doc. 74-1 (sealed).
[23] *E.g.*, Arraignment for Second Superseding Indictment Transcript at 13 (court copy).

- 5 -

Case No. 1:22-cr-00148
GWIN, J.

to prove that *only* Austin's drugs killed the decedent. Even if the drugs Austin sold were "not an independently sufficient cause of the victim's death," the penalty still applies if the decedent's "use [of Austin's drugs was] a but-for cause of the death ... ."[24] So, the presence of other drugs bears little relation to Austin's purported innocence.

**Plea circumstances, defendant's background & criminal history.** Austin gives no reason that the circumstances surrounding the guilty plea justify withdrawal. And Austin's three-decade criminal history outweighs any difficulty Austin may have otherwise had in understanding the proceedings. So, these factors also weigh against plea withdrawal.

Austin does not explain why any circumstances surrounding the guilty plea justify withdrawal. Instead, Austin repeats the already-rejected argument that Austin could not effectively communicate with Attorney Grostic. And Austin says that the decision to enter a guilty plea resulted in part from his "limited education and mental health issues."[25] Because education and mental health are not relevant to the circumstances-of-the-plea factor, the Court turns to Austin's nature and background.

Austin has had a difficult life. Austin's parents were addicted to drugs and could not financially support Austin.[26] Instead, Austin's family relied on government assistance for housing and often could not afford utilities or even food.[27] Austin began using alcohol and marijuana at age 10[28] and witnessed multiple murders beginning at age 13[29]. At age 23, Austin was kidnapped at gunpoint.[30]

---

[24] Burrage v. United States, 571 U.S. 204, 218–19 (2014).
[25] Doc. 65 at 6 (PageID 489).
[26] Doc. 75 ¶ 77 (PageID 567) (sealed).
[27] *Id.*
[28] *Id.* at ¶ 85 (PageID 568).
[29] *Id.* at ¶ 76 (PageID 566–67).
[30] *Id.* at ¶ 78 (PageID 567).

Case No. 1:22-cr-00148
GWIN, J.

Now 55, Austin requires ongoing treatment for depression and anxiety. Austin regularly sees a mental healthcare provider and takes multiple mental-health medications daily. Prior to his incarceration, Austin used marijuana and alcohol daily and cocaine weekly.

But although Austin has a troubled past and ongoing mental-health and substance-abuse issues, those factors are largely outweighed by Austin's significant experience with the criminal justice system. Austin concedes that he "has been before judges and entered guilty pleas on many occasions."[31] Indeed, between 1989—when Austin received his first felony conviction—and 2010, Austin never went longer than three years without being arrested.[32]

Austin argues that because his prior offenses were all state offenses, this factor should be neutral at best. But although state and federal proceedings differ somewhat, the sheer number of state proceedings to which Austin has been a party outweighs any federal/state distinction.

In sum, Austin makes no separate argument regarding the plea's circumstances. And although Austin's history and nature give good reason to closely examine the guilty plea, Austin's criminal-justice experience outweighs any concern that Austin's plea was not well-calculated. So, these factors collectively weigh against permitting plea withdrawal.

**Government prejudice.** Austin entered a guilty plea less than a week before trial. Presumably, then, the Government has already prepared to try Austin. Further, the Government does not argue that any of the witnesses it would call at trial have become unavailable. So, this factor does not impact the plea-withdrawal calculus.

---

[31] Doc. 65 at 6 (PageID 489).
[32] Doc. 75 at ¶¶ 41–59.

Case No. 1:22-cr-00148
GWIN, J.

### III. Conclusion

In sum, Austin's motion's unexcused lateness and failure to consistently maintain innocence weigh against plea withdrawal. And although Austin's troubled past and limited education give some pause, Austin's dozens of state-court criminal cases suggest that Austin fully appreciated the gravity of his guilty plea.

Accordingly, the Court **DENIES** Austin's motion to withdraw his guilty plea.

IT IS SO ORDERED.

Dated: April 19, 2023                              *s/    James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE